# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| JOSEPH NEESE,<br><br>   Plaintiff,<br><br>v.<br><br>CITY OF ASHBURN,<br><br>   Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW Joseph Neese ("Plaintiff" or "Mr. Neese"), by and through his undersigned counsel, and files this Complaint for Damages, showing the Court as follows:

## JURISDICTION AND VENUE

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of his rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA"), Plaintiff also invokes the jurisdiction of this court pursuant to the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

2.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 2000e-5(f).

3.

Defendant City of Ashburn ("Defendant" or "Ashburn") does business in this judicial district. Additionally, the unlawful employment practices committed by Defendant that form the basis of this lawsuit were committed within this district.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under the ADA and ADEA. Plaintiff filed a charge of discrimination with the EEOC in December 2019.

5.

Plaintiff requested the Notice of the Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), which was then forwarded to the U.S. Department of Justice. On September 17, 2020, the U.S. Department of Justice notified Plaintiff through counsel, that he has the right to institute a civil action against the City of Ashburn under: Title I of the Americans with Disabilities Act of

1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203, and 29 U.S. Code § 623.

6.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## PARTIES

7.

Plaintiff is a citizen of the United States of America and is subject to the jurisdiction of this Court.

8.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

9.

At all times relevant to this Complaint, Plaintiff was employed by and was an "employee" of Defendant, as defined under the ADA at 42 U.S.C. § 12111(4).

10.

During all times relevant hereto, Defendant has employed twenty (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

11.

Defendant may be served with process by delivering a copy of the summons and complaint to the City Manager, Tanita Norris.

## FACTUAL ALLEGATIONS

12.

Plaintiff began his employment with the City of Ashburn on June 12, 2018 as the Head Mechanic in the City's Vehicle Maintenance department.

13.

Plaintiff suffers from physical disabilities, due to numerous back surgeries beginning in 2016, one such surgery caused paralysis from the waist down, as well as corrective surgeries consisting of a spinal fusion with screws and rods.

14.

On June 8, 2018, City Councilman James Burks convinced Plaintiff to speak to the City Manager of Ashburn, Tanita Norris, regarding Plaintiff running the city's vehicle maintenance shop. Plaintiff revealed to the councilman previous injuries sustained to his back in 2015 and the limitations attendant to these injuries.

14.

On June 11, 2018, Plaintiff met with City Manager and acting City Human Resources, Tanita Norris. Plaintiff discussed at length his physical limitations.

Norris assured Plaintiff he would have assistance in the shop with his responsibilities, which would be primarily supervising and managing the department. Norris also stated that due to his being a salaried employee, he could adjust his hours as an accommodation for his back issues if the need for an accommodation arose. Plaintiff accepted the position based on the responsibilities and accommodations stated by the City Manager.

15.

Defendant was aware of Plaintiff's physical limitations.

16.

On June 12, 2018, Plaintiff began his employment with the City of Ashburn in the maintenance shop. Plaintiff was assisted by Mike Burgess, an employee temporarily assigned from the City's street department.

17.

Burgess was replaced after approximately one month by Antario Anderson, the City Manager's nephew. Due to Anderson's inexperience and unwillingness to work, the majority of duties fell on Plaintiff. Plaintiff was now forced to do more strenuous work than what was agreed upon with the City Manager. The strenuous work caused reoccurring back pain requiring Plaintiff to occasionally miss work.

18.

Shortly thereafter, Anderson was called by the City Manager and never returned to work.

19.

In March 2019, Plaintiff informed Norris that he had found a mechanic that would be willing to work in the maintenance shop on a part-time basis if the position would eventually become full-time. Norris agreed and Plaintiff then hired James Yawn, an experienced and qualified mechanic.

20.

On or about May 8, 2019, Plaintiff wore his back brace to work. Norris asked Plaintiff if he would be able to keep doing the job because of his back issues.

21.

Plaintiff approached Norris and requested that Yawn be made full-time. Norris stated there was not money in the budget for two full-time maintenance employees. Plaintiff then offered to reduce his salary by $5,000.00 per year in order to make Yawn full-time.

22.

Norris's response to Plaintiff's offer was that the shop budget was not set up to carry insurance on two full-time employees. Plaintiff offered to drop his city

insurance for Medicare when he turned 65 in October 2019. Plaintiff then offered, based on the new budget, to be part-time and Yawn full-time. Norris refused any and all suggestions made by Plaintiff. Yawn resigned on July 10, 2019 because he needed a full-time position as he had been promised to him.

23.

On July 10, 2019, Plaintiff immediately took Yawn's timecard to Norris to inform her that Yawn had quit. She then informed Plaintiff that she already chosen someone to fill his position.

24.

A month later, Plaintiff had not gotten any help in the shop and again forced to do all of the heavy work by himself. Occasionally someone from another city department would be available to help him in the shop. On one such occasion, July 25, 2019, Kevin Kimbowski from the City's street department, was available to help Plaintiff. Kimbowski helped Plaintiff move a transmission from the floor to the transmission jack, which is about chest high.

25.

The same day, while moving an automobile transmission with Kimbowski's help, Plaintiff reinjured his lower back. Plaintiff remained at work but sat at his desk attending to administrative duties.

26.

On Friday, July 26, 2019, Plaintiff went to work but reported his injury from the preceding day to City Manager, Tanita Norris. She told Plaintiff to go home and rest and that they would discuss it on Monday.

27.

On Monday, July 29, 2019, Plaintiff returned to work with continued pain, difficulty walking, bending, and getting up and down. That morning Mayor Pro tem, Howard Jordan, came by the shop and upon seeing Plaintiff's physical difficulty said that Plaintiff "wasn't a young man anymore and how this kind of work was for a younger man."

28.

On July 31, 2019, just a few days after injuring his back at work, Plaintiff was called into the City Manager's office and Tanita Norris told Plaintiff that he was being laid off so that he could draw unemployment for one year until he reached full retirement age. Plaintiff told her that he was not comfortable with that and wanted to continue to work.

29.

Norris stated that she didn't have a choice, that "the job was really suited for a younger man and that with his back issues we didn't want to put this kind of a burden on you; I want to lay you off so you can draw unemployment for a year and half."

30.

Plaintiff stated, "you hired me with back issues" and Norris responded that "we need to do this" and that it had been decided to lay him off rather than terminate him with the cause being lack of work so he would be approved for unemployment benefits. She then gave Plaintiff the option of which day to be his last day, August 2, 2019 or Wednesday, August 7, 2019. Plaintiff reluctantly agreed to August 7, 2019.

31.

On August 8, 2019, Plaintiff went to City Hall to pick up his separation notice and when leaving, he met Michael Emerson, who had been hired with the gas department about the same time Yawn quit.

32.

Emerson informed Plaintiff that he had already been given his City phone and would be taking over running the shop on Monday, August 12, 2019. Michael Emerson is approximately 20 years younger than Plaintiff.

33.

The City failed to engage in any interactive process with Plaintiff regarding his request for a reasonable accommodation for his disability.

34.

The City's purported reasons for Plaintiff's termination were merely a pretext for discrimination.

**COUNT I:  CLAIMS FOR RELIEF BASED ON DISCRIMINATION ON ACCOUNT OF AN ACTUAL OR PERCEIVED DISABILITY AND/OR FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")**

35.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

36.

Plaintiff was able to perform all essential functions of his job with a reasonable accommodation.

37.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

38.

Defendant was aware of Plaintiff's disability.

39.

Defendant regarded Plaintiff as having a disability such that he is a person with a disability within the meaning of the ADA, as amended.

40.

Plaintiff has a record of having a disability such that he is a person with a disability within the meaning of the ADA, as amended.

41.

Defendant failed to engage in any interactive process with Plaintiff regarding his request for reasonable accommodations of her disability.

42.

Defendant refused to provide Plaintiff with reasonable accommodations even though to do so would not impose an undue hardship.

43.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

44.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

45.

Defendant terminated Plaintiff's employment, in whole or in part, because of his disability, perceived disability, or record of having a disability.

46.

By terminating Plaintiff's employment because of his disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

47.

Defendant treated other employees outside Plaintiff's protected class differently.

48.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his disability in violation of the ADA, as amended.

49.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

50.

The effect of the conduct complained of herein has been to deprive Plaintiff of an equal employment opportunity, and has otherwise adversely affected his status as an employee because of his disability.

51.

As a direct and proximate result of Defendant's violation of the ADA, as amended, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

52.

As a result of Defendant's discriminatory actions against Plaintiff, he has suffered lost compensation and benefits, suffered emotional distress, inconvenience, humiliation, and other indignities.

53.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages,

equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

### COUNT II:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

54.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

55.

Plaintiff was a qualified individual with a disability.

56.

Plaintiff's disability substantially limited one or more of his major life activities.

57.

Plaintiff was able to perform the essential functions of his job.

58.

Plaintiff requested the reasonable accommodation to record the meetings that he was tasked to transcribe.

59.

Plaintiff's request for a reasonable accommodation constitutes protected conduct under the ADA, as amended.

60.

Defendant retaliated against Plaintiff by terminating his employment on the basis of his accommodation request.

61.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

62.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

63.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

64.

As a result of Defendant's retaliatory actions against Plaintiff, he has suffered lost compensation and benefits, suffered emotional distress, inconvenience, humiliation, and other indignities.

65.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages,

equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

### COUNT III:  VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

66.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

67.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his age in violation of ADEA, as amended.

68.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

69.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his age.

70.

As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has lost wages and benefits.

## COUNT IV:  RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

71.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

72.

Plaintiff engaged in protected activity when he complained of age discrimination.

73.

Defendant retaliated against Plaintiff by upholding the termination of his employment as a result of Plaintiff's protected activity.

74.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide its retaliatory motive.

75.

Defendant's retaliatory actions against Plaintiff were in violation of the ADEA.

76.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its retaliation against Plaintiff was undertaken in bad faith.

77.

As a result of Defendant's retaliatory actions against Plaintiff, Plaintiff has suffered lost compensation and benefits.

78.

Pursuant to the ADEA, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADEA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condemnation and approval of said acts;

(c) Reasonable attorney's fees and expenses of litigation;

(d) Trial by jury as to all issues;

(e) Prejudgment interest at the rate allowed by law;

(f) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(g) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(h) All other relief to which he may be entitled.

Respectfully submitted the 30th day of September, 2020.

**BARRETT & FARAHANY**

 s/ *Ian E. Smith*
Ian E. Smith
Georgia Bar No. 661492

*Attorney for Joseph Neese*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
iesmith@justiceatwork.com